UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

        Plaintiff,

v.

LUIS MARTINEZ,                              Case No. 1:21:CR-00089-JLS-MJR

        Defendant.
_____

## DEFENDANT'S PRE-TRIAL MEMORANDUM

Defendant Luis Martinez provides the following Pre-trial Memorandum to highlight issues Defendant foresees at trial in this case. Because these issues will be raised, litigated and reviewed in the context of the trial, this submission is not meant to be full-briefing on any of the issues highlighted; rather, in accord to the Court's Order, this briefing is designed to identify likely issues and provide pertinent background prior to the beginning of trial.

1.     **Issues with the Testimony of Sheila Mendez:**

The Defendant anticipates calling Sheila Mendez as a witness at trial. By way of background, Ms. Mendez resides at 64 Water Street, Jamestown, New York – the address that was searched on June 5, 2020. The Government called Ms. Mendez as a witness before the grand jury, where she testified without immunity. In that testimony Ms. Mendez made a number of statements that exculpate Mr. Martinez and, the defense anticipates, call into question the testimony of Government agents. More notably, Ms. Mendez acknowledged that she resided at

the 64 Water Street address with her family where the Government found a large quantity of methamphetamine, cocaine, drug paraphernalia and a firearm on June 5, 2020.

At trial the defense anticipates the Government will assert that Mr. Martinez used the 64 Water Street address to sell narcotics on a regular basis. Notably, in her grand jury testimony Ms. Mendez testified that: Mr. Martinez had never been inside the 64 Water Street address at any time before June 5, 2020; that Ms. Mendez used the Night Owl DVR system and video cameras outside the home to watch her children; and that she does not know Luis Martinez to sell drugs or to possess firearms.

It appears Mr. Mendez was not represented at the time she testified before the grand jury. In the event she is called to testify in this matter as a defense witness, defendant assumes the Court will appoint counsel to represent her. Given that set of circumstances, it is foreseeable that Ms. Mendez will assert her Fifth Amendment rights and refuse to testify at trial. In the event Ms. Mendez asserts her Fifth Amendment right and refuses to testify, the defense will seek admission of Ms. Mendez's grand jury testimony.

The Court should admit that testimony. The statements made by Ms. Mendez in her testimony are Statements Against Interest as understood by Federal Rule of Evidence 804(b)(3). That rule provides: Statement Against Interest. A statement that: (A.) a reasonable person in the declarant's position would have made only if the person believed it to be true because, when made, it was so

contrary to the declarant's proprietary or pecuniary interest or had so great a tendency to invalidate the declarant's claim against someone else or to expose, the declarant to civil or criminal liability, and (B.) is supported by corroborating circumstances that clearly indicate its trustworthiness, if it is offered in a criminal case as one that tends to expose the declarant to criminal liability. *United States v. Dupree*, 870 F. 3d 62 (2d Cir. 2017), cert. denied, 138 S. Ct. 1178 (2018).   Factors to consider include (1) whether the declarant is unavailable; (2) whether the average, reasonable person would consider the statement truly adverse to the defendant's penal interest; and (3) whether the trustworthiness of the statement is clearly established by corroborating circumstances. *United States v. Bigesby*, 685 F. 3d 1060 (D.C. Cir. 2012), cert denied, 133 S. Ct. 981 (2013); *United States v. Johnson*, 581 F. 3d 320 (6th Cir. 2009), cert. denied, 130 S. Ct. 3409 (2010).

At the time Ms. Mendez was sworn into the grand jury, she had been present for the search of her home by state and federal agents.  She was made aware of the narcotics and firearms discovered at the house.  She was given warnings that her statements could be used against her penal rights.  She acknowledged that she lived in and maintained the home, and she explicitly exculpated Mr. Martinez from any role in that regard.  Simply put, there is no question her statements are against her penal interests.

The Court must then determine whether there are corroborating circumstances indicating "both the declarant's trustworthiness and the truth of the statement." *United States v. Lumpkin*, 192 F. 3d 280, 287 (2d Cir. 1999). Further,

"the inference of trustworthiness from the proffered 'corroborating circumstances' must be strong, not merely allowable." *United States v. Salvador*, 820 F. 2d 558, 561 (2d Cir.), cert denied, 484 U.S. 966, 108 S. Ct. 458, 98 L. Ed. 2d 398(1987).  Here, Ms. Mendez's statements satisfy the trustworthiness test and truthfulness of the statements because her testimony was before a grand jury, under oath and subject to the penalties of perjury.  *United States v. Carlson*, 547 F.2d 1346 (8th Cir. 1976) ((the declarant, Tindall testified before the grand jury in which the statement was admitted under Rule 804(b)(5). The court found there was a strong indication of reliability in Tindall's testimony. His statements were made under oath and any misrepresentation or deliberate falsehood might subject Tindall to the sanctions of perjury).

### 2. Admissibility of Mr. Martinez's Prior Criminal History

The defense anticipates the Government will try to introduce all or part of Mr. Martinez's criminal history in its case in chief.  For a number of reasons, the Government's ability to introduce Mr. Martinez's criminal history should be limited.

Mr. Martinez has struggled with substance abuse his entire life.  As a result, Mr. Martinez's criminal history encompasses decades and includes several drug-related misdemeanor convictions.  It includes charges that are remote in time, including charges relating to firearms that are several years old.  It also includes a number of charges that have been dismissed or reduced as the result of plea negotiations.  While it is impossible to respond to the Government's offer of proof at

this juncture, the defense highlights this issue as an introduction to anticipated argument about this evidence at trial.

As the Court knows, admissibility of Mr. Martinez's criminal history is at the intersection of Federal Rules of Evidence 404(b) and 403.  In accord to Rule 404(b), admissibility of any such history should be limited to proving "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."  FRE 404(b)(2).   Such evidence is not admissible to prove Mr. Martinez's character or to show that he acted in accordance with that character on a specific occasion.  FRE 404(b)(1).  Of course, the admission of any such evidence is highly prejudicial, and due to its anticipated remoteness, it is unlikely to be probative of any issue at trial.  FRE 403.

### 3. The Admissibility of the June 5, 2020 K9 Exercise Performed by PO Kraft

Following the June 5, 2020 search of 64 Water Street, PO Kraft allegedly searched the residence with the police department's K9.  The Task Force allegedly located a large amount of US Currency inside the house.  For reasons that are unexplained, the K9 did not alert on the currency inside the house.  Rather, several hours later, the currency was brought back to the police department's headquarters and allegedly hidden by law enforcement.  Allegedly the K9 then alerted on the currency, which was in a cabinet beside a vending machine.

The above exercise raises a number of issues regarding the reliability and veracity of the exercise.  While it is impossible to know the particulars of the purported exercise, it raises obvious concerns relating to the validity and reliability

of the proffered testimony. In the event the Government seeks to admit the evidence, defense counsel will challenge that admission pursuant to FRE 702 and related case law. Simply put, from the limited knowledge available relating to the exercise, it does not appear any proffered testimony is based on reliable principles or methods.

DATED: Buffalo, New York
November 14, 2022

Respectfully submitted,

**LIPPES MATHIAS LLP**

By:   *s/ Eric M. Soehnlein*
Eric M. Soehnlein, Esq.
*Attorneys for Defendant Luis Martinez*
50 Fountain Plaza, Suite 1700
Buffalo, New York 14202
Telephone: 716-853-5100
E-mail: esoehnlein@lippes.com